Good morning. With the pleas of the Court, my name is Francis Doherty, and I'm here on behalf of Robert Pate, the appellant in this case. I'd like to begin by saying that when one reviews the entire record and the arguments made by the defendants and the evidence that they used to support their motion for summary judgment, you find that what we're dealing with is deeply disputed facts. We're dealing about conflicting inferences, about disputed assertions, and we're dealing about the credibility of witnesses, their points, their counterpoints. It's pretty much a tale of two cities. The defendants tell the Court it's a simple case. The plaintiffs say it's really quite complex. The defendants tell the Court they made no misrepresentations about profit, but the plaintiffs produced tax returns that show multimillion-dollar losses and individual monthly bank statements during the relevant period of time when representations were made about the financial health of the company. Defendants say that Pate did not rely on the representations that they made to him. The plaintiffs say Pate was concerned about the financial condition of the companies, asked about their financial condition, told that they were doing well, and based on that, sold lumber. What more evidence would there be that he relied on their statements? The defendants say the representations were made a long time ago, 1964. I'm sorry, 1964 really would be a long time ago, and therefore they're irrelevant. But the plaintiffs say nothing changed. The same line was given through that entire period from 1994 right up until the collapse of that company. Through all of that time, Berkeley had always represented that they owned the company, that they were behind the company and they were going to pay for the loans, I mean for the shipments and the outstanding balances that were due, and Mr. Pate shipped more. These are factual issues right down to the core. Now, with all and with no disrespect at all to the district court, the district court took sides, and the court took sides with the defendant. The court did not challenge many, many instances of suspected conduct on the part of the defendants, shredding the evidence, failing to produce minutes of the boards of directors for the Catalina Company, alleged corporate transfers of the interest of the 11th hour without any cash changing hands for the same group from this Channel Island. And that I'm not critical of because that was the function of the court's duty when reviewing a summary judgment motion. But in contrast, when the district court then started to make way evidence and made evidentiary determinations when it came to Pate's evidence, on the issue of did Berkeley control Catalina, the court made an evidentiary conclusion, and I quote this, Pate is unable to prove that the Berkeley defendants controlled Catalina to the extent necessary to establish an agency relationship existed. Yet there is substantial evidence of the day-to-day activity that these individuals who were Berkeley employees took on. They ran that company from 1994. Well, counsel, ordinarily what I would refer to as a business bailout outfit doesn't take on the liabilities of the business that it's trying to bail out. So isn't that kind of the appropriate going-in assumption that the purchaser remains the only party that's liable for the purchases unless there's a demonstration of something? Yes. The agency, the ostensible, yes, you do need legal theories. You need a legal theory of ostensible or apparent authority, which we have to create an agency relationship, where we have the case that was discussed thoroughly about where the company owns or controls the business and then takes part in the day-to-day activities. And once those two separate tests, but once all of those elements of those tests are there to be argued before the jury, then we have an opportunity and a legal basis to make our claim. And I'm not sure if you asked this question about Berkeley. Well, I asked it because you were, I think, critical of the district court's way of phrasing that there had to be something there. And I guess it seemed reasonable that the district court would start with the proposition that it's the purchaser that is the only liable party unless there's some demonstration of something more. I do not disagree with that legal conclusion. And that has never been a dispute. In fact, there was not a lot of legal. In my brief, I specifically spent a lot of time setting forth the facts, because there wasn't really much question about the representations. We know if someone makes a misrepresentation and they rely on it and to their detriment, et cetera. That's a simple cause of action in California that we are all aware of. We know about apparent and ostensible authority. So, I mean, there wasn't, in my view, much to say in terms of the law. The defendants set forth the elements of fraud. I don't disagree. They set forth the elements of negligent misrepresentation, which is a species of fraud. I do not disagree. But we do have evidence of fraud, and we do have these statements that were being made. And, for example, what I wanted to say, the court says, you know, that Berkeley didn't control Catalina. And it said, Pate is unable to prove that Berkeley defendants controlled Catalina as to the necessary to the extent necessary to establish this relationship. And that is to answer your question. Yes, they have to do that. But for the court on a motion for summary judgment, in all due respect, that decision goes beyond what the court should have looked at. Do we have evidence for? Do we have evidence against? May a jury reasonably assume that what is going on constitutes control? And there were like 21 items that I put down, and these weren't just made up. They were from documents, letters, memos that came in to show that they did control the business. It was well known that Berkeley controlled that business. That is a truth. And then, again, just to show how I think, and, again, I don't mean to be disrespectful in any regard, but the court then makes an evidentiary finding for Berkeley in that when they installed this in June of 99, when they tried to divest themselves from their connection with Catalina, the courts as well, the oversight committee wasn't sufficient. But, I mean, why is that so? Why can't a jury find that that oversight committee did exercise all control? That oversight committee consisted of the three Berkeley employees, all paid on Berkeley salaries. And then the highest ranking officer, Cindy Beachwood, who was the chief financial officer, was getting paid by Berkeley. Catalina didn't have a president, a CEO, a vice president. It didn't have anything. It wasn't run by anyone but Berkeley. And that's evidence. All I'm saying is I have a chance, my client should have a chance to get before a jury or a finder of fact to let them analyze these facts and say, is this, in fact, control or not? The clearest statement showing that the court was resolving facts for the defendant was the statement that even assuming that Beachwood told Pate during those telephone calls that Catalina was doing great, it was rolling along, everything was all right, it was profitable, the sales increased, and that Berkeley was backing Catalina, the court concluded Pate has not proven those statements were, in fact, false, not the job at summary judgment. That's the trier of fact. Pate doesn't have to prove that on summary judgment. Then the court in the same section concludes that Beachwood's claims are true. The court says because Pate's calls, telephone calls, to Beachwood in August and September occurred during the time that Beachwood claims, and it's the word claims, the company was profitable on a cash flow basis. But why did the court find Cindy Beachwood's testimony true? Tell me what the genuine issues of disputed fact are, in your view, concerning the sale in June 1999. One, the companies, I have a letter from, notes from the corporate counsel that the sale could not go through because of pension problems with the employees. We have unexecuted contracts that we found. We find no, not one penny, one dollar of money being transferred from this alleged new company to Catalina. No money went in. They just took a note out, and they're all up at the Channel Island. All the court had to work on was a letter from someone in the Channel Islands off England, and that was it. And why is that evidence so much better than everything else? And even after that, the control still went on with this oversight committee. And then on the fraud issue, the last thing I'm going to say, the fraud issue, we don't even have to show agency because the people who were making the promises and the representations were the Berkeley employees. Their employees on Berkeley salary respond at superior. That's it. They said it. If it's atrocious conduct, it's imputed to the Berkeley people. Thank you, counsel. You have exceeded your time. Thank you. I appreciate the extra time. And we will now hear from Mr. Mooney, I believe. May it please the Court, Richard Mooney on behalf of the defendants in this matter. Judge Ilston looked at all the evidence very carefully, wrote a detailed 23-page opinion in which she analyzed all the submissions that plaintiff made, all the evidence that was presented, and some undisputed evidence that the defendants presented. But the important thing to recognize is that in each instance where the plaintiff had the burden of proof, Judge Ilston didn't even need to look at the defendants' evidence in order to resolve the matter. Counsel does argue that, and does point out correctly, that in one place, Judge Ilston perhaps chose a word that she might not normally have chosen to use in a summary judgment opinion, and that is plaintiff failed to prove. I think it's clear throughout the opinion, and we do cite to page 81 in the excerpts of record in our brief, that Judge Ilston, an experienced Federal judge, well understood the standard. She wrote the standard on multiple occasions, and she understood what her role was at that time, and that was to evaluate under seal attacks whether a plaintiff had presented sufficient evidence to carry his burden. I'd like to address first the fraud claims. And there is, plaintiff goes on at length about whether there were statements that were false, and argues that one should infer that the statement allegedly made in September of 1999, that the company was profitable, might be false. The undisputed documentary evidence shows that the company was profitable on a cash flow basis, but even if the evidence were disputed, there is no evidence at all about reliance. Everybody agrees that under the Atascadero case and California case law for years and years, there are five elements of fraud, and a plaintiff must adduce evidence of reliance. Defendants asked in interrogatories for evidence of reliance. None was forthcoming. Defendants asked for evidence of reliance in the deposition. None was forthcoming. Defendants argued at length in the summary judgment brief that there was no evidence of reliance. None was forthcoming. No declaration was submitted in opposition to the motion for summary judgment saying, I am Robert Pate, I relied upon these allegedly false statements in deciding to make these sales. Plaintiff had multiple opportunities to present that evidence, which of course is not evidence that is within the purview only of defendants. I mean, the evidence is in his own mind, if it existed. He could have written a declaration saying, I considered these statements. If it were not for these statements, I would not have made those sales. The case law that we set out in our brief is very clear that the plaintiff must show that the challenge statements were an immediate cause of the decision to make these sales. There is no evidence that that is true. And I think that it's instructive to consider the reason there is no evidence that that's true. The last of these purported statements was made supposedly on September 1 of 1999. The first of these challenge sales was almost five months later, January 28th, and then they extended through April 2000. Between September 1 and January 28th, as the evidence we submitted and the record shows, and it's undisputed, Mr. Pate made 50 lumber sales to Catalina, and Catalina paid for them. The idea that Mr. Pate relied five months later on these purported statements made vague statements made a long time ago with no follow-up, no request for current evidence, nothing that a normal commercial business person would ask for in this kind of situation if they were going to rely on those statements. There was none of that. But the point of that is not to say that this Court or the Court below should draw an inference that there was no reliance because of the five months. It's simply to explain the reason the plaintiff completely failed to carry his burden of presenting that evidence in the first place. If I can move on for a moment to the contract claims, and that is these agency issues. In the Court below, plaintiffs relied upon the California Court of Appeals decision in Sonora Diamond, and the argument was that Berkeley, A, owned Catalina, and B, had taken over the day-to-day operations of Catalina and had purposefully disregarded the corporate entity. And if those two things were true, the Sonora Diamond Court held, liability could be imposed upon the parent company. Judge Ilston had very serious doubts about whether the ownership prong of the test was met. And she went through the evidence, and the evidence was virtually undisputed. I dare say undisputed myself. But the sale was made in June 1999, and there was no more ownership. But that's not the ground that Judge Ilston rested her decision on. And, of course, it's only one of the two things that plaintiff must present evidence about. The other is the control of the day-to-day operations and the purposeful disregard. And what Judge Ilston did, in her opinion, was to compare the evidence that plaintiff presented with the evidence that was before the Court in Sonora Diamond, which the Court in Sonora Diamond held was insufficient to avoid summary judgment. In Sonora Diamond, they had interlocking boards of directors. They had commingled funds. The subsidiary basically only existed to have shell control over a single mine that was, in effect, owned by the parent corporation from Canada. There was virtually no separation at all. Here, there was undisputed evidence that there were different officers, there were different directors, there was no commingling of funds. Catalina was a 650-employee company in Southern California that made furniture. Berkeley International is a financial services sort of turnaround takeover company. There was no evidence. All of the checks that paid for the wood that Mr. Pate sent were Catalina checks, no mention of Berkeley on the contracts, no mention of Berkeley on the invoices. It was just a company that Berkeley had invested in. And in comparing the undisputed evidence here with the undisputed evidence in Sonora Diamond, Judge Ilston correctly concluded that there was even less here. And under the California Court of Appeal authority, summary judgment was appropriate. So although plaintiff argues at length about whether there actually was a sale in June 1999, and, in fact, there was, John Quarterman's declaration is really undisputed on this point. That's not the issue that is necessary for plaintiff to win on this point. We noted in our brief that on appeal, after Judge Ilston rejected the Sonora Diamond argument, plaintiff's brief on appeal didn't address the issue. Sonora Diamond isn't cited in the brief. What plaintiff did instead was to change from this agency theory under Sonora Diamond to an ostensible agency theory under the Coldwell Banker case and related cases that weren't cited to the district court below. Well, I have a question about that, about not cited. It seems to me that the issue was raised below in terms of argument and facts, even though without citation to the case. For example, in the opposition to the motion for summary judgment at pages 10 and 11, which is supplemental excerpts 39 and 40, it seemed to me that in substance that argument was made, that there was a public — the Berkeley defendants publicly portrayed Catalina as their agent, allowing Pate to be reasonably influenced by its representations and then arguing from that. Why isn't that sufficient to at least raise the ostensible agency argument in the district court and particularly where the court seemed to be attempting to address it in the opinion? I think there's two reasons, Your Honor. The first is that in this Court's decision in the Kodak case, which we do cite in our brief on the question of whether an argument has been waived for appeal, the argument there that was waived was whether there was Section 1 liability on a rule of reason basis, because in the court below, they had only argued that there was a Section 1 violation on a per se basis. And what the Court's analysis shows there, and in the other cases that we cite, is that it's not enough to present facts which, if recharacterized or applied in a different legal doctrine, would be sufficient to state a claim. But, counsel, that's my point. There's more than facts. There's a description of those facts. And then the statement, this creates liability for such and such a reason. And what you seem to be saying is, well, you can argue the facts, you can argue what theory you think gives you relief on those facts, but if you don't actually also cite a case, you've waived the point. And I guess that seems a little overly pushy to me. That seems overly pushy to me, Your Honor, too, and I don't think that's our argument or what is necessary in this instance. What plaintiff argued below in the opposition was that these were fraudulent statements that Berkeley made. Berkeley allegedly portrayed Catalina as the agent, and they were lying when they did so, and this was sufficient to create liability. I'm sorry. For a lot of reasons that failed, for example, it was four years before the shipments were made and there was no reliance. On appeal, they now argue not that Berkeley, not that it was sufficient for Berkeley to say, oh, they're the agent, but that Berkeley is liable because Berkeley said that they were standing behind Catalina, that is, they would pay for them, or that Catalina had the authority to bind Berkeley. And neither of those were argued below, and certainly there was no argument below that Pate believed those statements at the time, or that he reasonably believed them, or the other. But isn't that a failure of proof rather than a waiver? As we argue in our brief, Your Honor, I think there's both here. I do believe that citing ten new cases and ignoring the one below under a different theory is sufficient to support a waiver under the Kodak case. But also for the same reasons, plaintiff admits that reliance is a necessary element, and as we argued in the fraud section, there is just not one iota of evidence on reliance. Thank you, Your Honor. Thank you. Mr. Doherty, we'll restore a minute of rebuttal time if you want to use it. I didn't know I was expecting that, but thank you. I did want to say something. Let me ask you a question on the ostensible authority claim. What evidence did you adduce that Berkeley stated or negligently implied that it would be bound by Catalina's actions? The statements? There were literally dozens of statements. I cannot give you the verbatim what they were. The one that I thought was a 1999 statement. Are they the same statements that you mentioned? In 1999, one of the statements was investing in Catalina is investing in Berkeley. And that was by Mr. Galley, who was the CEO at the time of Catalina and being paid by and an employee of Berkeley. And the one thing I did want to say about, when you look back at this, and there was so much made about reliance, and it wasn't even something that even dawned on me that this would be a big deal. Because, I mean, all pates have to say, they're saying he forgot to say or he didn't say. No one asked him to say. I relied on it. But, of course, we gave you the evidence. It's even better than just somebody's opinion. I relied on it. He showed the instances, why he did it, the statements that were made. The reliance was there. I maybe should have put a greater deal of emphasis on it.  He definitely relied on these statements. Thank you, counsel. We appreciate the arguments. And the case just argued is submitted. We'll turn next to Brotherhood Mutual Insurance v. Church Mutual Insurance. Thank you. And we'll hear first from Mr. Crouch. May it please the Court. Good morning. My name is Tom Crouch. I'm representing Church Mutual Insurance Company in this matter. This is a dispute between two insurers for claims arising out of some failed or insolvent real estate projects. Counsel, it seems to me, and I have a fairly simplistic way of looking at this case, so I'm going to set it down and you can both take a shot at what's wrong with it.  Well, there was a question about whether either company had any obligation to do so, and so everybody was focused on whether there was an occurrence or whether there wasn't. And then the primary insurer decided to defend and settle and did so, but it did so for less than was required to kick in the excess coverage. So why isn't that the end of the matter? I don't understand why there's any other issue in the case once we know that the amount is less than is required to kick in your excess coverage. I would agree 100 percent, Your Honor, with that simple assessment, and that's certainly one path that can be gone down. Why did you argue that below? I mean, that's the thing that's perplexing to me. The policy on its face is an excess liability coverage. Keep in mind, Your Honor, Your Honors, that there were three separate coverages or policy types. Well, right. That's true. That doesn't deal with the DNR. And so it was much more complex than just going straight to one of the three coverages and saying, well, this is easy. Now, let's focus on that one coverage, then. Yes. If we go just to the umbrella policy, what we're talking about is coverage for an occurrence resulting in personal injury. And, of course, the particular part of that policy that, you know, the hook of that policy is the emotional distress portion. Counsel, on that, I'm looking at the record at page 312 and 313. This is one of many contracts that were inserted into the record that is titled on one page, which appears to be the first page, umbrella liability policy. But on the next page, it's called a schedule of underlying insurance. And there it lists Church Mutual as offering the underlying insurance on comprehensive general liability, including personal injury. Was Church offering both an umbrella policy and the underlying general liability policy? There is and there was, obviously, a scheduled underlying Church Mutual policy that was not at issue at any point through today. Why isn't it at issue? I believe the definitions are different such that they don't extend coverage to bodily injury alone. Okay. Excuse me. Emotional distress alone. Has anyone ever argued that that underlying policy is at issue? No one has ever sought coverage. And this would be a policy that's different from either the counseling or the DOT policy. Okay. So what are the exact policies at issue here? They would be probably this high, which is why I hope the Court wasn't confused by the way they are put in the record. No, no, no. Don't tell me. I mean, I understand how that was put in the excerpts. But I'm just saying there's an umbrella liability policy for various years. Yes, Your Honor. Then what's the next type of policy? What's been termed the DOT policy, which would be a director, officer, and trustee policy, covers wrongful acts. Right. Does not cover bodily injury type claims. Right. And then there's the multi-parole policy, which had the counseling coverage. That was a particular part of that policy that was argued or which coverage was sought under? We have three types of policies at issue. Yes, Your Honor. And the first one is the umbrella policy. And that's the only one that would fall into the other insurance issue, and that's an excess liability policy. Yes, Your Honor. Although, obviously, if the lower court had found coverage under one of the other coverage parts, there would have been additional analysis on the other insurance clauses. Well, now, why? If it's not triggered until a million dollars of underlying payments are made, why would any of the coverages in that policy come in? Is it because it's lower limits for other types of coverages? These are separate. You know, the DOT policy is a separate policy. It's a primary policy for DOT coverage. Yes. I'm just focused on the first policy. The umbrella. Right. That would, if there's other coverage available, umbrella policy is, by definition, general principle is umbrellas are intended to be kind of the last resort. They're the extra coverage one purchases above and over other coverages. Counsel, is the umbrella policy that the Church offered a true excess insurance policy, or do we have to construe the other policy? I think umbrella policies have traditionally been characterized closer to true excess policies, but umbrella policies can drop down on occasion and provide, for example, a defense to the insured if there isn't other coverage available. But generally speaking, an umbrella policy is more like a true excess policy, intended to be the one of last resort. So if we were to, if we were just focusing on the umbrella policy, do we have to construe the other insurance clause? Yes, Your Honor. Well, you have to apply it and look to the other insurance clause because we have another carrier who was defending, and that's the ultimate question here, is that other carrier entitled to half of what it paid? Wait. The other insurance clause of the umbrella liability policy? Yes. Okay. And where is that in the policy? It's quoted in my brief, and the particular page of the excerpt would be cited, Your Honor.  Well, there's an excerpt 329 on the limits of liability. It says the company, there's some other stuff. The company shall only be liable for the ultimate net loss in excess of the applicable limits of underlying insurance as stated in Declaration 7 and other underlying insurance collectible. That's the limit of liability provision. Okay. The other insurance clause would be a different provision. Okay. I'm reading that now. But it says there, too, the insurance afforded under this policy shall apply as excess insurance, not contributory. Yes, Your Honor. I'm sorry. The other insurance clause I think is on 331. It looks like it's paragraph E. I mean, I just have a failure of understanding why the end of the answer on the umbrella isn't that it doesn't, it's not triggered until a million dollars of the underlying. That is the answer, Your Honor. Then why did you tell me I have to look at the other insurance clause? Well, that is, the other insurance clause is saying this insurance is excess. It doesn't contribute. Well, so does the limits of liability clause. It's the nature of the policy. There's really three clauses that demonstrate the general intent that this umbrella is the last resort, the limits of liability clause, the other insurance clause, and the duty to defend clause, which says we only defend if there's not an underlying insurer that's doing so. So, I mean, there's three provisions that get you to the same place. That was actually going to be the third topic that I addressed. Okay. Well, why don't you start with that, go backwards to number two and then number one. The other two matters I was going to address, of course, are the umbrella or, excuse me, the occurrence issue and the personal injury issues. Why don't you briefly tell us why the DOT policy doesn't apply and why the pastoral counseling and the multi-parole policy doesn't apply? The DOT policy doesn't apply because there's an exclusion that couldn't be clearer in saying that the policy doesn't cover any wrongful act related to the Paradise Valley estates. And this entire underlying action was related to actions arising out of the sales of units in the Paradise Valley estates. The DOT, a prior DOT policy issued by Church Mutual had actually paid something like 2 million. Church Mutual had paid like 2 million in some bondholder litigation that predated this particular policy. So when they came around to issue this DOT policy, they said, we're putting an endorsement on because we know bad things are going on with this PVE. So that endorsement couldn't be clearer in precluding coverage for this action. The counseling coverage is a type of what I would call kind of a professional liability policy issued to cover counseling activities. It's intended to cover situations where people sustain emotional harm in the course of pastoral counseling. This was a case involving sales in a real estate project that didn't have anything to do with liability involved in the rendering of counseling services. Counselor, did the district court reach the counseling policy? It didn't reach either of those two policies, counseling or DOT. If we were to agree with you on the umbrella policy, do we need to remand to the district court findings on the counseling and the DOT policy? No, Your Honor. I believe that would be the utter waste of judicial resources. And I've cited some law in my briefs indicating that, you know, I know the general rule is an appellate court doesn't want to address things that weren't specifically decided by the district court. But there is authority in this circuit for the proposition that in certain circumstances it's okay to do that. And this is certainly one of those circumstances because really two things. The issues were all exhaustively presented to the lower court, and they involved questions of law. Are there no facts here, Counselor, that any pastor may have counseled parishioners to purchase something at Paradise Valley Estates? No. The only thing that is mentioned, the only argument that's ever been presented, is a couple of the director types that were involved in these transactions happened to be ministers. And as a minister, they carried with them some sort of trust that these folks, when they were buying, thought, well, I'm purchasing. You know, if a minister is telling me it's okay to buy into these, it must be, you know, that's good enough for me. But that's not counseling activity by any stretch. I would urge the Court to address those extra two issues under the authority that I've cited, and I'll reserve the remainder of my time. You may do that. Thank you. Mr. Temple. Thank you, Your Honors. If it pleases the Court, my name is Greg Temple. Several things on the umbrella question. First of all, there was no record made of that in the district court. We presented this on stipulated statement of facts, and granted there were voluminous documents, but there was no stipulated fact that addressed anything having to do with umbrella or other insurance clauses. Counselor, it seems to me that the – well, I guess I have two questions about that. First, as I understood the stipulation, it specifically reserved this for a later time rather than not thinking about it. So it wasn't out of validation, it seemed to me. But what other facts besides the policies would be relevant to determining whether this umbrella policy is an excess policy or a primary policy? What other facts are there? Well, there – we never went through and said these are the provisions in the policies that are relevant and that the Court should look to. There was never any specific reservation of the other insurance issue or the umbrella issue. There was a blanket provision that said we would like to reserve the opportunity to raise additional issues, and the district court never approved that, and the district court, in fact, said no. No, but in terms of timing, it was – am I correct that at the time that the two insurance companies started arguing with each other, the payments had not yet been made to the plaintiffs in the underlying action? Is that a – am I right? Correct. I am right about that. Okay. So at the time, it made sense for both companies to be arguing that nobody had to pay. But once your client undertook the defense and the settlement, that seems to have passed out of the case in a way, and then we're left with saying, well, okay, now that we know that the primary insurer has paid X dollars, then don't we logically go to the next step, which is, okay, now that the primary insurer has paid that many dollars, what, if anything, does the umbrella excess carrier owe? Well, I guess the first – my first position is more procedural, which is the district court said if you wanted to make that argument, you needed to make it in your motion in response to the motion for summary judgment in your cross motion or in your cross motion. But it was pretty sure at that time. That's – I guess what's frustrating to me is the district court is coming back and saying that you should have done this prematurely before anybody knew whether it was relevant. And now that it is relevant, we won't talk about it. Well, it's no less relevant than any of the other provisions. I mean, we didn't say we will deal with the multi-parole policy. If there's nothing there, we'll go on to the DOT policy. If there's nothing there, we'll brief the umbrella policies. This is a motion for summary judgment to decide whether – going on, though, to the specifics of umbrella. These two insurance companies insure different time periods. And so if the church mutual policy was an umbrella policy, it was an umbrella to whatever coverage existed at that time. And those are listed in their policy as the underlying insurance. Well, none of that is Brotherhood because Brotherhood insured a different time period. The allegations in the lawsuits spread over the two time periods. And what the district court said on the merits in response to that in rejecting their argument in the context of deciding, approving the judgment, was you both had a duty to defend. The fact that you didn't insure the exact same time period doesn't change. So the church mutual umbrella policy is not an umbrella to Brotherhood because Brotherhood wasn't insuring anyone at the time church mutual was. But the church – but it was – the umbrella policy we're looking at, the underlying policy was a church mutual policy. But nevertheless, the insuring agreement on the umbrella policy was for amounts only in excess of a million dollars. Of the underlying. Of the underlying. And just because it's a different time period – in fact, which – during which events occurred which you contend give rise to liability and which was also disputed doesn't mean that you don't change the nature of the agreement. It's a contract. This is what they agreed to pay. They agreed to pay for damages, emotional distress, mental anguish that occurred during the time period that they insured. In excess of a million dollars. In excess of a million dollars of the underlying. There is a provision because we did not brief this. I don't have it, but there is a provision in that umbrella policy that says if there is no underlying coverage that applies to a particular claim, this coverage becomes primary. But underlying coverage did apply. That's what your companies paid. No. If you look at the list of the underlying policies, Brotherhood isn't there. Brotherhood insured a completely different time period. There is a phrase, though, that said or any other underlying insurance, right? It can't be underlying insurance because it didn't exist at that time. Brotherhood didn't start insuring them until after the church mutual policy was over. Time periods. Just chart out for me the time periods that are involved in the Brotherhood policy and how that relates to the underlying plaintiff's claims. I would have to look back at the stipulated statement of facts, and I can't do that. Okay. Speaking of the stipulated statement of facts, didn't it contemplate further briefing on the excess insurance provision of church mutual's umbrella policy? There was a blanket. No, there is no mention whatsoever of that issue. There is just the very last thing says we reserve the right to raise other issues. And the district court concluded, I mean, the district court did not approve that. The district court concluded that after motion for summary judgment, across motion for summary judgment and responses, that that was all. Yeah, I know. But that could be wrong to conclude. It could be. Didn't church mutual file objections saying, wait a minute, we're an excess policy? They filed an objection saying that there are other insurance clauses, and the district court answered it in two ways. Number one, he said, this has been fully briefed. If you wanted to raise that issue. Wait a second. I don't accept your characterization. Here's the district court's order. Church mutual objects to the proposed judgment on the grounds that its policies are excess. So the district court, that objection was made to the district court. Correct. But in objection to the judgment. Right. The first thing the court said was on 403, the court notes that Brotherhood's motion was not a partial motion for summary judgment and concluded with these words, we are asking for judgment in a specific amount. This doesn't really answer the objection that their policies are excess. No, it answers the objection. And I'm doing it wrong again. It's not really a good answer. It answers the objection that if you had intended to raise this, you should have raised it because it was not a motion for partial summary judgment. It was a motion for summary judgment. But, Counselor, if the court had resolved the motion for summary judgment in Church's favor, that would have resolved all issues, wouldn't it? Isn't that what Church is saying? Church isn't saying there are no other issues that would ever need to come before this court, no matter how you'd resolve this question. It's saying if you resolve the motion for summary judgment in our favor, that will conclude the lawsuit. If it had said that to the judge and said that we want to consider this partial or we want to bifurcate the issues, the judge may have said okay. The judge, when faced with it afterwards, said that's not a good idea. Was there any order issued from the judge saying I want motions for summary judgment and this will be everything? Only afterwards when a new issue was raised in response, a substantive issue was raised in response to the judgment. But the district court went on to say that both of them had an obligation to defend and, therefore, we don't need to get to this other issue. And the reason that there was an obligation to defend was because we're talking about two completely separate time periods and you don't an umbrella policy cannot be an umbrella over a policy that has not yet been purchased. So it had to be an umbrella policy over something, over some other policy. Well, and it specifies over the underlying policies and then the underlying policies are specified. And what were those underlying policies? Who had issued those? Church Mutual had issued at least the. . . Well, then why aren't those policies at issue instead of the umbrella policy? Because they didn't provide coverage for mental anguish. So isn't that the answer? Well, why would we go to an umbrella policy as the excess insurance if the underlying insurance doesn't cover the occurrence? Because the umbrella policy specifically says if there are coverages that are provided by this policy that are not provided by underlying insurance, then this becomes primary insurance. Do you think this would benefit from supplemental briefing? Absolutely, Your Honor, because it has never been briefed. It has never. . . There is no factual basis. We did not go through, as we did with all of the other policies, and stipulate these are the relevant provisions, these are the relevant provisions. We did that with all of the other policies in our stipulated statement of facts. We never did that on the other insurance questions or the umbrella questions because it was not at issue in the motions for summary judgment. So there is no factual basis. We presented this on stipulated statement of facts. There is nothing in those stipulated statement of facts that address this question, and so therefore the district court. Let me follow up, though, again. Is this a matter of more facts or more briefing to follow up on Judge Wardlaw's question? Because if all the. . . Let me ask the question. If we have in front of us all of the relevant policies and the only issue is what arguments do you want to make to us, we can ask for more briefing. If what you're telling us is, oh, there are a bunch more policies, there's this, that and the other that isn't even in the record, that's a different question. So which is it? Are there more policies that need to come into the record or do you just want to make arguments about what's in the record? I suspect that it is argument on. . . I did note that in one of the instances, only the odd-numbered pages of the policy were duplicated, and so. . . Is that true in the original record as well? It is, Your Honor. And it may make a difference. There may be provisions on those even-numbered pages that would be relevant to this issue. I didn't. . . It didn't matter at the time that we made the record because this issue was not being raised. But absolutely, there has never been substantive briefing on this question other than in the limited context of an objection to the judgment. And absolutely, if this Court, either this Court intends to make a ruling on it or send it back to the district court for a ruling, there absolutely should be some kind of briefing because there never has been. Well, do you have anything to add on the other two coverages? Well, the primary, the important thing, and I don't know if the Court has questions on the occurrence issues, which has formed the basis for the district court's ruling. I don't have much to add on the counseling other than what's in the brief or on the DOT, but. . . Counselor, tell me about the DOT policy. Do you dispute that there's a manuscript exclusion here? No. The exclusion is there. That was stipulated. . . So the DOT policy should be off the table? I have pointed to a letter that explains what it is meant to explain, and the district court never reached it, didn't need to reach it. The important things are. . . I'm sorry. I didn't understand your answer. Do you contend that the DOT policy is still in play here? Does the manuscript exclusion that applies to Paradise Valley Estates exclude the DOT policy? I pointed out a letter that I. . . that we believe explains what it was intended to do, and it was not intended to reach situations like this. But that's not the primary focus of our. . . So it's still. . . So in your. . . According to Brotherhood, then, it is still in play? Not before this Court, because it was not ever addressed by the district court. It's still being played before the district court. Sure. But what is most important is the umbrella coverage for the occurrence and the mental. . . Does the court have any questions on that? Would you like me to address that? I mean, that's what the district court analyzed, and that's where the district court made its decision. And, I mean, I don't. . . It just depends if you want to hear. I guess the only thing that I would say on that is they. . . Church Mutual suggests that based on the allegations of the complaint, there's only one possible conclusion, and that is that these people intended to cause harm. That's not true at all. I mean, they sold interest units in a residential retirement community, and their statement is, we fully intended that these units would increase in value. We fully intended to be able to provide all of the services that we promised to provide, but because of downturn in the real estate market, increases in the cost of providing the services, it just didn't work out that way. Yeah. I think we do understand that position. That was well briefed. Thank you. By both sides. Thank you, Your Honor. Thank you, counsel. I believe you have some rebuttal time remaining. I disagree with the characterization that our objections were raised after the judgment. The Court issued its order and requested Brotherhood Mutual to file a proposed judgment, and that's the time at which these additional issues were raised. And Judge Wardlaw, excuse me, it's page 337 is the other insurance clause in the excerpts. This insurance is excess over any other insurance. The question of the timing, these policies not overlapping, but being at different time periods would not be relevant to a defense question, which insurer has to defend the action. It might be relevant in determining a damage, an indemnity question, where we're going to allocate indemnity dollars over a period of time. There you might say the indemnity dollars allocated to this period of coverage, you ask whether there's only the umbrella policy available for that period of time, and if the answer is yes, only that policy provides coverage for the indemnity obligation. But the defense obligation, if there's other insurance, that carrier has the defense obligation. I'm going to ask you a question that I asked in a previous case in another context, and that is have these parties made any effort to settle this case since it's been on appeal or through our mediation program? Yes, Your Honor. Okay. Thank you. Thank you. The case just argued is submitted, and we will take a short recess before hearing the last case on the morning docket.
judges: Graber, Wardlaw, Bybee